Hamilton Odell, Referee.
"In this action the plaintiff seeks to recover the sum of $2,341.81 for a balance due on contracts for plumbing work, and for work done and moneys expended and goods sold and delivered at the defendant’s request between March 1, 1888, and October 1, 1889. The defendant denies the several allegations of the complaint, and then alleges, by way of counter-claim, that between July 1, 1887, and *352 April 1, 1890, the plaintiff performed certain work and furnished certain materials under certain written contracts ; that he also ‘ performed certain other work and furnished certain other materials, which last mentioned work and materials were additional or extra work to that contemplated by the said contracts ; ’ that the said contract and extra work and materials were worth, and the defendant agreed to pay therefor, only the sum of $66,903.38; that defendant has paid to plaintiff, for and on account thereof, the sum of $69,167.81, and that the excess, to wit, the sum of $2,264.43, is ‘ due and owing from plaintiff to defendant.’ At the beginning of the trial the defendant was permitted to amend his answer by alleging that the excess of payments made by him to the plaintiff was the sum of $3,592.43, and also to plead an expenditure of $257.81, made necessary by the defective work of the plaintiff ’ in some of the houses to which this controversy relates.
“ It is admitted that the contracts above referred to amounted to the sum of $61,200.00, and that the plaintiff has been paid by the defendant the sum of $69,167.-81. The hills—108 in number—rendered by the plaintiff for extra work and materials amounted to $8,741.91. The defendant concedes that they are correct to the extent of $7,606.28. Forty-nine of these 108 bills— amounting to $1,689.87—were produced by the plaintiff upon the trial, and he testified that they were accurate and true hills, and that they had not been paid. Twenty-five of them are not disputed by the defendant; to the remaining twenty-four he urges the following objections:
“ He objects that they include bills—amounting to $322.51—for services rendered upon houses belonging to D. Willis James. The defendant denies that these services, with the exception of a single item, were rendered at his request or at the request of any person authorized by him. They were charged to James in *353 the plaintiff’s hooks, and the plaintiff téstiñed : ' Originally I made out the bills against D. Willis James, knowing that he owned the houses; but Mr. Prague tokl me to make out the bills against him, that he would have to stand that.’ This Prague denied. The proofs show that Prague was the contractor for building the James houses ; that the work covered by these bills Avas done while the plaintiff’s men were engaged in the performance of the contracts for plumbing other buildings for the defendant in the immediate neighborhood; that the plaintiff was instructed by the defendant to do any work which he might be ordered to do by the defendant’s men in charge; and the plaintiff’s testimony is that he received orders to do the work from either Mr. Prague or his representatives. All of the bills were presented to Mr. Prague and were paid by him. He testified that he did not know at the time that they were for work done upon the houses of Mr. James ; but that was a fact of Avhich he could not have been ignorant, as each bill plainly specified the house upon which the services and materials charged for had been expended. There is no visible reason for sustaining this objection.
“ The defendant further objects that the said bills include charges—amounting to $221.85—for moneys expended :by the plaintiff without request or authority on the part of the defendant. This item was paid by the plaintiff to the department of public works for ‘ building purposes,’ or ‘ building permits,’ or permits for building purposes ’—by which I understand permits to connect the defendant’s premises on 86th and 87th streets with the croton mains. Mr. Prague testified that he ‘ did not order him (the plaintiff) to pay them; ’ that it must have been done by the mason for water purposes ; ’ that ‘ it was paid for the mason—lie used the water there; ’ that it is outside of me altogether; ’ and that ‘ I don’t know anything about it, except that he paid for the water for the mason, and there is a bill *354 rendered to me.’ The mason referred to had contracted with the defendant to do the mason-work of the building which the defendant was erecting upon the premises mentioned above. His testimony is that the permits were not procured by his. direction and that he had no knowledge whether the water taps were put in by plaintiff. The plaintiff testified that he procured and paid for the permits at Mr. Prague’s request. Mr. Prague admits that the plaintiff’s contract to do the plumbing in said buildings did not provide that he (the plaintiff) should pay those items for building purposes/ and that the bill was rendered to him before the buildings were completed and before the mason had Heft the job.’ The weight of testimony is against the defendant’s claim.
“ Another objection is that the defendant is charged with the sum of $110 for work, materials and expenditures which the plaintiff was bound to do and furnish by the terms of his contract. Included in this is an item of forty dollars paid by McSorley for sewer permits. He says that he obtained these permits at the request of the defendant, who promised to repay him the money expended. This is not denied by the defendant, and he admits that the permits related to buildings on the Ninth avenue mentioned in the contract of June 25, 1888, and were obtained by the plaintiff prior to the making of that contract. His claim, stated in his own language, is as follows: ‘ He (the plaintiff) was on the ground there and had commenced this work. If he hadn’t got the job, he would have been paid for that work outside of any contract; but as long as he took the job it flowed on and was included in the' contract. We always do that.’ He was asked—‘Will you state how the $40 comes to be included in the contract of June 25, 1888, that appears to have been paid two months prior to that time, and before you had ever entered into a contract with McSorley' for plumbing *355 those nineteen houses ? ’ His answer was—‘ Because, if the same plumber that originally starts the work finally makes a contract, it is covered in his contract.’ This, doubtless, was Mr. Prague’s understanding, but it does not appear that it was assented to by McSorley, or that he had any knowledge of any general custom applicable to or governing such cases, and there is nothing in the written contract to show thatMcSorley’s claim for the money expended for these permits, based upon both the defendant’s prior request and his subsequent promise, was in any respect waived or released by the provisions of that instrument. These views dispose, also, of the objection to the items for water taps and paving in plaintiff’s exhibit 28.
“ The last objection to the plaintiff’s claim, under the bills put in evidence by him, is an alleged over-charge of $6.50 in exhibit number 13. The proof does not sustain it.
“ The plaintiff’s alleged cause of action is, therefore, in my opinion, established to the extent of the sum of $1,689.87, the amount of the said forty-nine bills for extra work. Whether the plaintiff is also entitled upon this accounting—for this action is substantially that— to be credited with the whole or any part of the $600 retained by the defendant out of the contracts of August 29, 1887, and February 18, 1888, will be considered in connection with the matters alleged in the way of counter-claim by the defendant.
" The brief submitted by the learned counsel for the defendant, points out with great clearness the grounds of the defendant’s objections to the plaintiff’s alleged cause of action, and also the grounds of the defendant’s counter-claims. It has been of great assistance to me in the examination of this case. Some of the objections raised by it have already been disposed of; others remain to he considered.
" Objection is made that the 108 bills rendered by the *356 plaintiff for extra work include duplicate bills amounting to $123.02. The objection is well taken.
“ Another objection is that the bills contain overcharges for materials furnished, amounting to $258.11. The testimony on this point is unsatisfactory on both sides. I have examined it with care and patience, especially that of Mr. Napier, which was given with great frankness and intelligence. My conclusion is that the objection is not sustained.
“ The defendant does not deny that the work and materials specified in the bills 3-24-30-64-66 and 67 (produced by him) and charged at $60.30, were done and furnished by the plaintiff, but insists that they are included in the written contracts, although he admits that he does not know where part of the work charged for was done. I have not been referred to, nor do I find, any clause or provision in contract or specifications which seems to support the defendant’s claim. The plaintiff testifies that the charges are all for extra work rendered at Mr. Prague’s request.
: “ A further objection is that the defendant should not be charged with the sum of $33.34, the items of which are set forth in defendant’s exhibit 28. The facts, as I understand them, are as follows: The defendant purchased of Elliott Zabrowski a lot on the north side of 86th street, east of the 9th avenue, and erected a house thereon. A small wooden building stood upon the lot, which the defendant (so he testified) moved upon land adjoining, which belonged to Zabrowski. This fact fairly warrants the inference that the building was reserved by Zabrowski in his contract with defendant, and that defendant assumed the duty of removing it to the adjacent premises. It had connections with the Croton main. The disputed services were rendered in severing these connections before, and in restoring them after, the building was removed. • The work was done by the plaintiff’s men, by direction of the defendant’s *357 superintendent, and is a proper and just charge, I think,against Mr. Prague.
" The defendant’s final claim is that the plaintiff did not fully perform his said contracts with the defendant; that some of the work was done in an unworkmanlike and defective manner; that some of the materials furnished were of an inferior quality, and not such as the contracts called for; and the defendant has thereby sustained damages in the sum of $2,219.89. This sum, according to a schedule submitted by the defendant, is composed of four items, the first of which is an item of $665.43 for repairs to the plumbing work in the nineteen houses and three flats mentioned in the contract of January 24, 1889. The defendant’s testimony is that in July, 1889, he had a conversation with the plaintiff about defective work and allowances to be made by the plaintiff therefor; that plaintiff said ‘ to go ahead and make good what I could of it,’ and that he Avould make whatever allowances were right; and that after-wards he (the defendant) " paid a lot of bills.’ McSorley denies that such a conversation took place. I am. unable to find any satisfactory proof that the work done by McSorley upon the building referred to was so defective as to require this outlay to put it in good condition or make it conform to the requirements of his contract. The terms of the contract were explicit and peculiar. The plaintiff Avas required to finish the plumbing work ‘ in a good, workmanlike, and substantial manner, to the satisfaction and under the direction of the said John Gf. Prague, to be testified by a writing or certificate under the hand of the said John Gf. Prague,’ and payment was to be made by the defendant as follows: ‘ As the work progresses 75 per cent., and the balance when the whole work is fully completed, agreeable to plans and specifications—provided that in each of the said cases a certificate shall be obtained and signed by the said John Gf. Prague or his superintendent of works.’ *358 It is a significant fact that McSorley quit work upon the buildings about March 12, 1890, and that on that day the defendant paid him in full for all moneys due upon the contract, taking from him a receipt as follows: ‘ Received, New York, March 12, 1890, by cash, five hundred and fifty dollars in full of this contract for three flats and nineteen houses, including the supplementary contract of $4,000 attached, and also including $350 on the three flats.’ . Much the larger part of the $665 had then been expended by the defendant, and his relations with the plaintiff were no longer friendly. It is difficult to believe that he would have paid in full, without objection, the balance remaining of the contract price, and also extra compensation for extra work upon the flats, if there had existed the cause of complaint against the plaintiff for defective work, which is now asserted, on account of which the defendant had already been put to hundreds of dollars of expense.
" Another item of the schedule above referred to is the sum of $891.31 for ‘ difference in quality of materials.’ I have carefully examined the testimony upon this point. It does not, in my judgment, warrant the allowance of this claim. Moreover, these materials were furnished and used by the plaintiff from time to time during the progress of his contracts, and were open to the inspection of the defendant, and of his agent, an experienced sanitary engineer, who was employed to look after the plumbing work, and who made examinations of that work several times a week for" more than a year before it was completed, and, as already mentioned, the plaintiff left the work and .received full payment of the contract of January, 1889, without objection on the part of the defendant. The rule declared in the case of Oregon Improvement Co. v. Roach, 117 N. Y., 531, would seem to preclude the allowance of this claim, even if it were sustained by satisfactory proofs.
“ The same objections apply to another item of the *359 same schedule—‘ Cost to complete, $578.50.’ This item is made up of $300 for overflows tó tubs and sinks, $258.50 for 23 1-2 pairs of basin legs, and $20 for ten oak water-closet lids. Mr. Napier testifies that ‘ the overflows from the wash tubs were omitted.’ I find no testimony as to their value. He also testifies that ten pairs of basin legs and the ten oak lids were also omitted. The plaintiff’s testimony is that the lids and all the basin legs called for by his contract were provided.. The charge is not sustained.
“ The fourth and last item in the said schedule is an item of $84.65 for resetting water closets in eleven of the nineteen houses mentioned in said contract of January, 1889. This is disallowed for reasons already stated.
“ My conclusion, upon all the testimony, is that there was a substantial, if not an exact, performance by Mc-Sorley of his several contracts with the defendant; that he is therefore entitled to recover in this action the balance remaining unpaid on the contracts of August 29, 1887, and February 18, 1888, and that no part of the over-payments and counter-claims alleged by the defendant has been established. Crediting the plaintiff with $69,818.89 (the amount of the contracts and his claims for extra work and materials and moneys expended), and charging him with $69,167.81 (the amount of moneys paid to him by the defendant), the balance appearing to be still due to him is the sum of $651.08. He, however, contends that the $69,818.89 does not represent or include all of the defendant’s indebtedness to him, on account of which the $69,167.81 was paid. His claim is that by' direction of Mr. Prague he put double plumbing ’ in five of these houses on 86th street, east of the Ninth avenue, for which Mr. Prague agreed to and did pay him the sum of $1,500, which sum is not included in the bills rendered by him to Mr. Prague, but is included in the above amount of payments. The testimony shows as follows:
*360 “ On June 25, 1888, the plaintiff agreed ‘ to furnish all the plumbing work in nineteen houses and three flats, situated on West 86th and 87th streets, 8th, 9th, and 10th avenues, for the sum of $32,550, andan extra charge of $300 for each and every house in which double plumbing is ordered by John Gr. Prague,’ and to take in part payment a house on West 86th street, with all gas fixtures now in place, subject to a first mortgage of $24,000.’ The plaintiff desired to be relieved from this latter part of the agreement, and about the 17th of December, 1888, a new arrangement was made between the parties, by which the defendant, in consideration of a credit or allowance of $3,500, released the plaintiff from his obligation to take the house, and by which, also, certain changes were made in the specifications for plumbing work, principally affecting the five houses in 86th street above mentioned. For these changes the plaintiff was to receive $4,000 additional compensation. On the 24th of January, 1889, the parties executed a new agreement, by which McSorley agreed, for the sum of $32,250, to do the plumbing work of the said nineteen dwelling houses and three flats ‘ agreeably to the drawings and specifications made by John Gr. Prague, architect, and signed by the said parties and hereto annexed,’ and also to provide the necessary materials ‘ for the completing and finishing all the plumbing work and other works of the said buildings mentioned in the plumber’s specifications.’ This agreement also provided for the payment to plaintiff of the additional $4,000, for which he agreed ‘ to put in extra improved plumbing in the five houses on 86th street, east of Ninth avenue, for and as specified in specification in detail attached to this contract.’ This specification is a memorandum dated December 17, 1888, the day when the original agreement of June 25 was first modified, as above narrated.
“ There is no dispute over the meaning of ‘ double *361 plumbing.’ It consists of double boilers, one inside of the other, and a double supply of connecting pipes. The defendant admits that double plumbing was put by his order in the five houses east of the Ninth avenue. But he contends—first, that the agreement of June 25th was superseded by that of January 24th (and I agree with him); and second, that the double plumbing in the five houses was included in the latter contract. He says, ‘ there is $4,000 paid for double plumbing and extra fixtures in those houses.’ This is a plain mistake. The agreement of January 24th expressly declares that the additional $4,000 is to be paid for the ‘ extra improved plumbing’ specified in the memorandum of December 17th. That memorandum makes no mention of double plumbing. Nor is it provided for in the agreement, nor in the specifications therein referred to. Therefore the conclusion seems to be unavoidable that this double plumbing was extra work, outside of the plaintiff’s contract engagements, and as it was done at the defendant’s request, the law implies an agreement on his part to pay its fair and reasonable value. I take this to be the sum of $300 per house, as stipulated in the agreement of June 25th. No bill for this double plumbing was presented to the defendant by McSorley, because, as he testified, he considered that it was contract work under the first agreement relating to these houses.
“The plaintiff also claimed upon the trial that he should be credited in his account against the defendant with the sum of $300 paid to one Brahm for marble, by defendant’s direction. The proof shows that such payment was made by him, and that the money was refunded to him by the defendant. It is credited to the defendant in the plaintiff’s books, but does not enter into the $69,167.81 which the defendant claims to have paid and the plaintiff admits having received.
“ The other marble bill, over which there was some dispute, amounting to $1,417.98, is bill number 108 *362 of defendant’s exhibit A, and is admitted by the defendant.
Charles W. Dayton, for appellant.
Hatch & Warren, for respondent.
“ The plaintiff is entitled to judgment for the sum of $2,151.08, with interest.”
Per Curiam.
We find no errors in the rulings of sufficient weight to warrant a reversal. The testimony satisfactorily sustains the findings of the referee and justifies the judgment rendered.
For the reasons set forth in the opinion of the referee the judgment is affirmed, with costs.